CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
APR 29 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CASSANDRA HENDERSON, *Plaintiff,* | CASE NO. 6:08-cv-00042 |
| v. | MEMORANDUM OPINION |
| WHITE'S TRUCK STOP, INC., and ANDY TACKETT, *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court upon Plaintiff's Motion for Summary Judgment (docket no. 64) and Defendant's Motion for Partial Summary Judgment (docket no. 82). I have fully considered the arguments and authorities set forth in the parties' filings, as well as those presented at the March 31, 2011 hearing. For the following reasons, I will deny Plaintiff's motion and grant Defendant's motion.

## I. BACKGROUND

Plaintiff Cassandra Henderson filed a complaint on December 11, 2008 against White's Truck Stop, Inc. ("White's" or "Defendant") and Andy Tackett, a former employee of White's, for sexual harassment and constructive discharge, assault and battery, and intentional infliction of emotional distress. White's moved to dismiss the complaint on the grounds that Henderson failed to allege sufficient facts to impute liability to White's for Tackett's actions. The Court granted Henderson leave to amend the complaint to correct deficiencies in the pleadings, and Henderson filed an amended complaint on April 30, 2009. The motion to dismiss was denied as moot. Defendant Tackett failed to plead or otherwise defend, and the Court entered default for Tackett pursuant to Federal Rule of Civil Procedure 55(a).

Count One of the amended complaint alleges a sex discrimination and sexual harassment and constructive discharge claim against White's under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et. seq. Count Two alleges that White's is liable for assault and battery under Virginia common law pursuant to the doctrine of respondeat superior.[1] Count Three brings a claim for intentional infliction of emotional distress under Virginia law. Henderson seeks injunctive and equitable relief and compensatory and punitive damages.

The suit concerns workplace harassment. White's, a company of more than 100 employees, operated a full-service truck stop in Raphine, Virginia, off Interstate 81, complete with a restaurant, fuel service, truck wash, and service garage. Henderson began working at White's on or about January 6, 2006 as a cashier in the travel store, which provided services to commercial truck drivers such as trucking accessories for sale and controlled access to customer showers. Henderson worked the second shift, from 4:00 p.m. to midnight. Henderson's supervisor was Pattie Funk, who worked the earlier shift and generally was not present during Henderson's shift. During her shift, Henderson reported to Joy Jones, who was her more senior coworker or "lead," or to Bob Moore, the second shift manager of the fuel desk, a separate department of White's.

Tackett was employed by White's as a truck washer, and he also worked the second shift. Tackett's supervisor was Sam Lunsford, who was not present during the second shift. Tackett testified that when there was no truck to wash, he was free to "[g]o wherever [he] wanted to" within the truck stop complex as long as he could hear the announcements of truck arrivals on the public address ("PA") system. (Tackett Dep. 50:11-51:19.) Teresa Fisk, who was the general manager of White's, and Funk both testified that truck wash employees were permitted

---

[1] The amended complaint also alleged liability for the ratification by White's of Tackett's conduct. No argument was made on that theory, and counsel for Plaintiff represented that she is no longer pursuing that ground.

to go into the travel store where Henderson worked to purchase items, but they were not supposed to hang out there. (Fisk Dep. 92:4-10; Funk Dep. 43:9-19.) The truck wash facility is located "far away down the other end of the buildings" from the travel store. (Henderson Dep. 36:11-16.)

The parties dispute the facts surrounding the alleged harassment. Henderson claimed that Tackett hung out frequently at the travel store counter and "brought a constant torrent of sexually explicit jokes and sexually-charged innuendo and comments about women in general, and/or concerning Ms. Henderson or Joy [Jones]." (Pl.'s Br. Supp. Mot. Summ. J. 3.) Henderson attested that the sexually explicit jokes and comments were a regular occurrence. (*See* Henderson Dep. 48:5-7 ("[Tackett and another employee] would meet in front of our area and tell jokes. This was a daily thing. It was obnoxious, disgusting jokes."), 104:22-23 ("It was an everyday thing.").) Henderson testified that on several occasions, Tackett touched her on the breast, buttocks, neck, and shoulders, and he tried to kiss her. (*Id.* 73:14-15, 78:9-10; "Comments an [sic] Actions I have recieved [sic] from Andy Tackett" dated Aug. 13, 2006 (hereinafter "Comments").) She asserted that he tried to corner her in isolated places in the travel store by following her to the bathroom or to the cooler. (Henderson Dep. 44:10-15, 73:13-18, 76:22-77:3 ("He followed me in the cooler and tried to trap me in the cooler one night.").) She stated that he waited for her in the parking lot after her shift and has followed her after work part of the way to her house. (Comments.) Henderson asserted that Tackett was convicted by the General District Court of Rockbridge County, Virginia of stalking her during the period from March 16, 2006 through August 7, 2006.

Henderson also asserted that Tackett directly threatened to harm her and exhibited other threatening behavior. (Comments ("Told me if I ever said anything I would have a price to pay.

Says hes [sic] been stabbed 25 times shot 4 from jealous husbands"; "Told me storys [sic] about how he hurt people"; "Put arm around my neck. 'Hard'"; "He like to tear me to pieces"; "Stated he could reach out at [sic] touch me and I never knew it"; "Put both hands around my neck from behind while I was setting down"; "Grab my sholders [sic] while walking by and realy [sic] hit some presure [sic] points").) In addition, Melissa Register, a fuel desk employee, testified that she observed Tackett telling dirty jokes to Henderson and Jones, and that it was not unusual at White's for jokes with sexual innuendo to be told. (Register Dep. 21-23, 28-29.) White's largely denies that any sexual harassment occurred.[2]

Henderson testified that Tackett's physically abusive behavior culminated on the evening of August 6, 2006, when Tackett touched Henderson's breast, and she reported it to Moore and threatened to quit. In response, Henderson stated that Moore called Fisk (the general manager), who directed Moore to fire Tackett for insubordination, which he did. (Henderson Dep. 78:9-22.) Henderson remained that day to complete the night shift, but she stopped working at White's afterward.

Henderson testified that she reported the harassment numerous times before August 6, 2006. Henderson attested that she complained on a "weekly basis" about Tackett to Moore, Funk, and Stephen Burch, who was another fuel desk manager. (*See id.* 54:3-19, 59:2-21, 63:7-20, 67:2-15, 73:19-23, 77:17-24.) But Moore stated that he did not receive any complaints from Henderson until the night Tackett was fired. (Moore Dep. 24:7-22.) With regard to Funk, Henderson testified that she registered some complaints verbally and others by writing notes on her timecards to Funk. It appears that Funk reviewed timecards for completion, although Fisk stated that writing messages on a timecard was not a common means of communication at

---

[2] The record contains descriptions of additional instances of sexually harassing conduct that I have not listed here in the interest of brevity.

White's. (Fisk Dep. 120:3-10). On the timecard dated May 20, 2006, Henderson wrote "Pattie Andy Mouth is relly [sic] bad he said thing's [sic] to me I didn't like and in front of a customer with a little girl tonight dirty jokes . . . not good." On the timecard dated June 10, 2006, Henderson wrote "Pattie Andy still hanging around been two week's [sic] now!!!" Funk testified that she never received the comments on the timecards (Funk Dep. 78:4-16), and had no other knowledge about Tackett sexually harassing Henderson until the day after Tackett was fired (*id.* 57:8-11.) With regard to Burch, Burch wrote a letter dated May 8, 2009, in which he stated that "[o]n at least two (2) separate occasions Ms. Henderson did inform me that Andy Tackett had harrassed [sic] her on the evening shift" and that "according to her, [] these incidents were of a sexual nature," and were "lewd and inappropriate" and she was "getting tired of it." In addition, Henderson testified that on at least one occasion, a customer complained to Moore when Tackett used sexually explicit language while telling a joke to Henderson and Jones within the hearing of the customer's minor daughter, and Moore asked Henderson about it before reporting it to Fisk. (Henderson Dep. 48:7-49:5.) The record reveals that Henderson asserted that her husband spoke directly to Fisk about Tackett's behavior. Moreover, Henderson's coworker and shift "lead" Jones was aware of at least some of Tackett's conduct. Henderson stated that she and her coworker Jones had talked about what could be done to make Tackett stop. (*Id.* 58:6-17, 73:9-10, 77:17-19.) Henderson testified that Tackett's harassment changed her personality and harmed her ability to trust others, leading her to avoid social situations and employment in customer-service positions. (Henderson Dep. 94:11-96:13.)

White's denies that Henderson disapproved of Tackett's conduct. Register, a fuel desk employee who worked different hours than Henderson, testified that when she saw Tackett

telling dirty jokes to Henderson and Jones, they would listen and laugh and occasionally tell their own dirty joke. (Register Dep. 28:18-30:10.)

## II. APPLICABLE LAW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Once a motion for summary judgment is properly made and supported, the non-moving party may not rely merely on allegations or denials in its own pleading, rather it must set out "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). When considering a summary judgment motion, the court must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

The standard is the same for cross-motions for summary judgment. The court must consider "each motion separately on its own merits to determine whether either of the parties

deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quotations omitted). If the court finds that there is a genuine issue of material fact, both motions must be denied. 10A THE LATE CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2010). "But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." *Id.*

### III. DISCUSSION

#### A. Sex Discrimination, Sexual Harassment, and Constructive Discharge

Title VII of the Civil Rights Act of 1964 forbids an employer

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex.

42 U.S.C. § 2000e-2(a)(1).

To establish a Title VII claim for sexual harassment in the workplace, a plaintiff must show "that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). To be actionable, sexual harassment must be objectively hostile or abusive, and the victim must subjectively perceive it as such. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). Plaintiff seeks summary judgment on her Title VII claim. Defendant denies that most of the harassment described by Henderson took place, aside from Tackett telling lewd jokes at the travel store counter. Defendant directs the Court to the testimony of employees at White's who attested they did not know of the harassment, it was not reported to them, and relations between Henderson and Tackett appeared friendly. Thus, the fact

whether the harassing behavior occurred is genuinely in dispute. I hold that genuine issues of material fact exist with regard to the first, third, and fourth prongs of the Title VII analysis.[3]

To determine whether sexual advances were unwelcome, "[t]he correct inquiry is whether [the plaintiff] by her conduct indicated that the alleged sexual advances were unwelcome." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 68 (1986). There is conflicting evidence in the record as to whether Henderson welcomed Tackett's behavior. Plaintiff argues that her written complaints to Funk on the timecards and her verbal complaints to Burch on at least two separate occasions indisputably establish that she did not welcome Tackett's behavior. In contrast, Defendant argues that Register's testimony showed that Henderson welcomed and reciprocated Tackett's conduct. Register stated that Henderson and Jones would listen to Tackett's jokes, laugh, and tell their own dirty jokes, and that Henderson never gave any indication to her that Henderson did not appreciate Tackett's conduct. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150; *see also Meritor Sav. Bank*, 477 U.S. at 68 (issue as to whether conduct was unwelcome "presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact"). Viewing the facts in the light most favorable to White's, White's has asserted a genuine issue of material fact about whether Henderson viewed the conduct as unwelcome.

There are also unresolved issues of fact with regard to the third prong, which concerns whether the alleged conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. In determining whether a hostile work environment exists, a court must look at the totality of the circumstances, which

---

[3] Defendant does not appear to dispute that the harassment, if it occurred, was based on Henderson's sex. It is reasonable to assume explicit or implicit proposals of sexual activity would not have been made to someone of the same sex. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

includes consideration of the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interfered with the employee's work performance, and what psychological harm, if any, resulted. *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 193 (4th Cir. 2000) (citing *Harris*, 510 U.S. at 23).

With the question whether the harassment even occurred still in dispute, I cannot conclude that Henderson was subjected to a hostile work environment. Although Plaintiff maintains that a single act of assault and battery is actionable as sexual harassment under Title VII, there are genuine issues of fact whether any assault or battery occurred. A fact finder could reasonably conclude that the alleged conduct did not create an abusive work environment. Plaintiff's citation to *Harris* and *Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir. 1989) is unavailing. Neither the Court in *Harris* nor in *Paroline* ruled that a plaintiff suing for sexual harassment was entitled to summary judgment. In *Harris*, the Court held that the district court erred in considering whether the plaintiff had shown psychological harm in its grant of summary judgment for the defendant, and the Court remanded for further proceedings. 510 U.S. at 23. In *Paroline*, the court held that the district court erred in granting summary judgment for the defendant because "reasonable minds could differ" as to whether the defendant's conduct created a hostile atmosphere. 879 F.2d at 105 ("[W]hether [the] harassment was sufficiently severe or pervasive is quintessentially a question of fact."). Plaintiff also cites *Ocheltree*, in which the United States Court of Appeals for the Fourth Circuit affirmed a jury's finding that the plaintiff was the victim of severe or pervasive workplace sexual harassment. 335 F.3d 325. *Ocheltree*, like *Harris* and *Paroline*, does not provide support for finding as a matter of law that an abusive workplace was created.

The fourth prong is whether the offending conduct can be imputed to the employer on some factual basis. The standard has been articulated by the Fourth Circuit as follows:

> Whether and under what standard an employer may be held liable for sexual harassment depends on whether the harasser was a supervisor or merely a co-worker and on whether the plaintiff suffered a tangible employment action. If the plaintiff's claim is based on the actions of her supervisor, the employer is subject to vicarious liability. . . . If the plaintiff was harassed by a co-worker rather than a supervisor, however, the employer is not vicariously liable and can be held accountable only if the plaintiff proves that the employer itself *was negligent in failing to take effective action to stop harassment about which it knew or should have known.*

*Whitten v. Fred's, Inc.*, 601 F.3d 231, 243 (4th Cir. 2010) (emphasis added); *accord Ocheltree*, 335 F.3d at 333-34.

Even where an employer had no actual knowledge of the harassment, it can be charged with constructive knowledge. An employer cannot avoid liability for coworker harassment by adopting a "see no evil, hear no evil" strategy. *Ocheltree*, 335 F.3d at 334. Knowledge of harassment can be imputed to an employer "if a reasonable [person], intent on complying with Title VII, would have known about the harassment." *Id.* (quotations omitted). Under this rule, an employer may be charged with constructive knowledge of coworker harassment when it fails to provide reasonable procedures for victims to register complaints. *Id.* The rationale is that an employer that "did not exercise reasonable care in setting out the channels by which it could receive reports [of sexual harassment] . . . is therefore in no position to rely on those inadequate channels to claim that it did not receive notice." *Id.* at 335.

Because Tackett was Henderson's coworker, Plaintiff is obligated to show that White's knew or should have known about the harassment, and was negligent in failing to take effective action to stop it. Viewing the facts in the light most favorable to Defendant, Plaintiff has not established that White's knew or should have known about the alleged harassment. Plaintiff

pointed to evidence that Henderson made written complaints to Funk on two timecards. But Funk testified that she never saw those comments. In addition, Fisk testified that writing messages on a timecard is not a customary means of communication at White's. Thus, there is a genuine question as to whether the written comments provided notice or should have provided notice to Funk.

Plaintiff also cited evidence that Henderson made at least two complaints to Burch, which Burch acknowledged in a letter. Burch was not Henderson's supervisor, and there is no evidence that Burch relayed those complaints to Henderson's supervisor or to others at White's. Defendant's sexual harassment policy instructs employees to report any incident of sexual harassment to the immediate supervisor. The policy provides that if there is a problem with reporting the incident to the immediate supervisor, the employee should report the incident to the department manager or general manager, or to Brenda Pavlick, a designated employee responsible for reporting and responding to sexual harassment incidents in a confidential manner. Although no training on the sexual harassment policy was provided, it remains a disputed fact whether the policy provided a reasonable procedure for victims to register complaints. Whether the offending conduct can be imputed to White's is an appropriate issue for trial.[4]

Plaintiff also moves for judgment that she may seek punitive or exemplary damages against White's for violation of Title VII. Recovery of punitive damages for a claim of unlawful intentional discrimination under 42 U.S.C. § 2000e-2 is authorized by the Civil Rights Act of

---

[4] Plaintiff makes no argument in support of her constructive discharge allegations. In the Fourth Circuit, "an employee is constructively discharged 'if an employer deliberately makes the working conditions of the employee intolerable in an effort to induce the employee to quit.'" *Whitten v. Fred's, Inc.*, 601 F.3d 231, 248 (4th Cir. 2010) (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353-54 (4th Cir. 1995)). A constructive-discharge plaintiff must therefore allege and prove two elements: (1) deliberateness of the employer's actions and (2) intolerability of the working conditions. *Id.* To prove deliberateness, the plaintiff must prove that the actions complained of were intended by the employer as an effort to force the employee to quit. *Id.* Plaintiff has not alleged that the employer *deliberately* made the working conditions intolerable for Henderson *in order to induce Henderson to quit*. This aspect of Plaintiff's suit may be the appropriate subject of a motion to dismiss brought at trial for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(h)(2)(C).

1991, 42 U.S.C. § 1981a(a)(1). *See also Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 548 (4th Cir. 2003). To be awarded punitive damages, the plaintiff must demonstrate that the employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights" of the plaintiff. 42 U.S.C. § 1981a(b)(1). The terms "malice" or "reckless indifference" pertain to the knowledge that one may be acting in violation of federal law, not one's awareness that one is engaging in discrimination. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999); *see also Ocheltree*, 335 F.3d at 335-36 (citing *Kolstad*).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for the motion, and identifying those portions of the record which she believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Plaintiff has not identified any evidence in the record to demonstrate the absence of a genuine issue of material fact regarding whether discrimination occurred in the face of a perceived risk that the actions would violate federal law. *See Kolstad*, 527 U.S. at 536. For this reason, I cannot grant Plaintiff the relief she seeks.

### B. State Tort Law Claims

Plaintiff seeks to hold White's liable for Tackett's alleged assault and battery and intentional infliction of emotional distress on a theory of respondeat superior. Virginia law controls the vicarious liability of an employer for the allegedly tortious acts of its employee. The parties have filed cross-motions for summary judgment on the state tort law claims.

Under the doctrine of respondeat superior, an employer may be liable for an employee's tortious conduct where the activity that gave rise to the tortious act was within the scope of the employment. *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 43-44, 453 S.E.2d

261, 265 (1995). Once the plaintiff shows that an employment relationship exists, it has made out a prima facie case of respondeat superior liability, shifting the burden to the employer to prove that its employee was not acting within the scope of his employment when he committed the tortious act. *Gina Chin & Assocs., Inc. v. First Union Bank*, 260 Va. 533, 542, 537 S.E.2d 573, 577-78 (2000). In determining whether particular employee conduct was within the scope of employment, an employer may be held liable even if the conduct was not undertaken with the intent of furthering the employer's interest. *Id.* at 543, 537 S.E.2d at 578. Rather, the relevant test to determine whether particular conduct is within the scope of employment is "whether the service itself, in which the tortious act was done, was within the ordinary course of the employer's business." *Blair v. Defender Servs., Inc.*, 386 F.3d 623, 627 (4th Cir. 2004) (quotations omitted). Accordingly, respondeat superior liability "may be imposed, for example, where a supervisor is engaged in workplace duties or functions." *Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705, 713 (E.D. Va. 2004). An employer may also be held vicariously liable for an employee's harassing conduct when the employee engaged in the conduct as he "execut[ed] [] the service for which he was engaged." *Plummer v. Ctr. Psychiatrists, Ltd.*, 252 Va. 233, 237, 476 S.E.2d 172, 174 (1996). Respondeat superior liability may not, however, be imposed "solely on allegations that the harassment took place at the work place and during work hours." *Tyson Foods*, 378 F. Supp. 2d at 713.

At the outset, Plaintiff argues that because default has been entered against Tackett, Plaintiff's allegations regarding Tackett's behavior must be admitted as true, even against White's. I do not agree. Although a defaulting party is deemed to have admitted all well-pleaded allegations of fact in the complaint, excluding the determination of damages, *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001), the default of one party is not an

admission of liability on the part of a nondefaulting coparty. Answering codefendants are not precluded from contesting factual allegations because one codefendant is in default and has thereby admitted those facts. *Cf. Frow v. De La Vega*, 82 U.S. 552, 554 (1872) (when defendants are charged with joint liability and one defendant makes default, the court should "simply [] enter a default . . . against him, and proceed with the cause upon the answers of the other defendants"). Plaintiff presents no authority to the contrary. This result is consistent with the Fourth Circuit's "strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (vacating in part district court order denying motion to set aside entry of default); *see also Tazco, Inc. v. Dir., Office of Workers Comp. Programs*, 895 F.2d 949, 950 (4th Cir. 1990) ("The law disfavors default judgments as a general matter."). With genuine issues of fact that Tackett committed the tortious acts remaining, Plaintiff is not entitled to judgment as a matter of law on the state tort law claims.

I turn to Defendant's motion for partial summary judgment. Regardless of whether Tackett sexually harassed Henderson, Defendant maintains that White's cannot be held liable because the acts did not occur within the scope of Tackett's employment. Most of the facts relevant to this question are not disputed. Tackett was employed to wash trucks in the truck wash facility, which is located in a different part of the truck stop complex than the travel store, where Henderson worked. Tackett did not have any work duties with Henderson or in the travel store, which is a completely separate department from the truck wash. The harassment, if it occurred, took place in the travel store area. When there were no trucks to wash, Tackett was allowed to go to the travel store to purchase items. Announcements were made over the PA system to notify truck wash employees of the arrival of a truck to wash, and the PA system could

be heard in the travel store. An employment relationship existed, so it is White's burden to prove that Tackett was not acting within the scope of his employment.

What is in dispute is whether Tackett was permitted to spend time in the travel store beyond that needed to purchase items. Defendant asserts—assuming Tackett was permitted to remain in the travel store—that passing time in the travel store was in no way connected with his duties as a truck washer. Defendant argues that under the law, the mere fact that the acts occurred during work hours while the employee awaited customers is not enough to impose respondeat superior liability. It is Plaintiff's position that Tackett was "on call" when he harassed Henderson at the travel store, as he listened for an announcement over the PA system that his services were needed washing a truck. Thus, in Plaintiff's view, Tackett was engaged in his regular workplace duty of awaiting the next truck wash customer.

The case law supports Defendant's position. In *Blair*, an employee hired to perform janitorial services at a public university attacked a female student in a school bathroom while he was on duty. 386 F.3d 623 (4th Cir. 2004). The Fourth Circuit affirmed the district court's holding on summary judgment that the janitor's attack "had nothing to do with his performance of janitorial services," and therefore he was not acting within the scope of his employment. *Id.* at 627. It reasoned that "the simple fact that an employee is at a particular location at a specific time as a result of his employment is not sufficient to impose *respondeat superior* liability on the employer." *Id.*

*Tyson Foods* is also instructive. 378 F. Supp. 2d 705 (E.D. Va. 2004). There, the plaintiff alleged that her coworker had supervisory authority over her and that, during work hours, the coworker invited her into his office, closed the door, asked her to date him, and "grab[bed] her buttocks, pulled her toward him, pressed his pelvic area into hers, and simulated

the act of sexual intercourse." 378 F. Supp. 2d at 710. The court held that these allegations failed to establish Tyson Foods's respondeat superior liability because the actions were not within the scope of the employment. *Id.* at 714. The court explained that the supervisor "was not engaged in his workplace duties or functions when he asked Plaintiff on a date, attempted to kiss her, and touched her inappropriately." *Id.*

Closely on point is *Meade v. Johnston Memorial Hospital*, No. 1:10-cv-00024, 2010 U.S. Dist. LEXIS 91468, 2010 WL 3463639 (W.D. Va. Sept. 2, 2010). In *Meade*, the court dismissed an assault and battery claim brought against an employer on the basis of respondeat superior liability. A registered nurse employed by the hospital allegedly sexually harassed a phlebotomist employed by the hospital while they were both on duty. 2010 U.S. Dist. LEXIS 91468, at *1-2. The nurse allegedly had supervisory duties over the phlebotomist. *Id.* at *2. The court held that the bare factual allegation that the nurse and the phlebotomist were both on duty when the harassment occurred was not sufficient to give rise to respondeat superior liability. *Id.* at *10. The complaint did not allege that the nurse "engaged in the harassing conduct in connection with his execution of the duties for which he was hired." *Id.* at *11. The phlebotomist had not alleged, for example, that the nurse's harassment occurred "while he was assisting patients, managing medications, or in any way interacting with [the plaintiff] in connection with his alleged 'supervisory duties' over her." *Id.*

Taken together, these cases establish that the tortious acts giving rise to the employer's liability must occur in connection with the exercise of specific workplace duties or functions. Tackett had no work-related responsibilities in the travel store. He was not serving customers there, nor was he interacting with the coworkers stationed there in order to accomplish work tasks. The simple fact that he was permitted to be in the travel store during work hours as a

result of his employment is not sufficient to impose liability on White's. *See Blair*, 386 F.3d at 627.

The cases cited by Plaintiff in which courts refused to grant summary judgment or a demurrer for the employer all involved the commission of a tortious act while the employee was engaged in the service for which he was employed. *See Gina Chin & Assocs.*, 260 Va. at 545, 537 S.E.2d at 579 (bank teller participating in criminal scheme to accept forged checks for deposit "was performing a normal function of a bank teller in accepting checks for deposit"); *Majorana v. Crown Cent. Petroleum Corp.*, 260 Va. 521, 527, 539 S.E.2d 426, 429 (2000) (gas station employee sexually assaulted customer while she was attempting to purchase her gas from employee); *Plummer*, 252 Va. at 237, 476 S.E.2d at 174-75 (psychologist had sex with his patient at employer's place of business while he was in the course of providing her with counseling for suicide ideation and depression); *BellSouth Servs.*, 249 Va. at 46, 453 S.E.2d at 266 (employee solicited and collected bribes from vendors while performing duties as contract administrator and "in the execution of the services for which he was employed").

Even when viewing the evidence in the light most favorable to Plaintiff, Tackett was executing no job functions while passing time in the travel store. Respondeat superior liability may not be imposed "solely on allegations that the harassment took place at the work place and during work hours." *Tyson Foods*, 378 F. Supp. 2d at 713. Therefore, I will grant Defendant summary judgment on the assault and battery claim and the intentional infliction of emotional distress claim.

## IV. Conclusion

For the reasons stated herein, the Court will deny Plaintiff's Motion for Summary Judgment, and will grant Defendant's Partial Motion for Summary Judgment. Trial will proceed on the Title VII claim. An appropriate order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 29th day of April, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE